IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HARDEE'S RESTAURANTS LLC, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 3:25-cv-01135** |
| | ) | **Judge Aleta A. Trauger** |
| ARBOR CAPITAL PARTNERS, LLC; | ) | |
| GERGES GERGES; EDWARD | ) | |
| GERGES; AIHAB GERGES; and ACP | ) | |
| RESTAURANT MANAGEMENT, INC., | ) | |
| | ) | |
|     Defendants. | ) | |

**<u>MEMORANDUM</u>**

In this diversity action, plaintiff Hardee's Restaurants, LLC ("HR") sues the defendants, Gerges Gerges, Edward Gerges, Aihab Gerges (collectively referred to herein as the "individual defendants"), Arbor Capital Partners, LLC ("ACPL"), and ACP Restaurant Management, Inc. ("ACP Management") for breach of a Franchise Agreement (Doc. No. 1-1 at 1–47) and attached Guarantee ("Franchise Agreement Guarantee") (*id.* at 48–50), Sublease Agreement (Doc. No. 1-4), and Sublease Guarantee (Doc. No. 1-5). (*See* Doc. No. 1.) Now before the court is the defendants' Motion for Partial Dismissal and to Transfer Venue. (Doc. No. 24.)

More specifically, in the supporting Memorandum of Law, the defendants argue that: (1) the court should dismiss the claims for breach of the Sublease and Sublease Guarantee under Rule 12(b)(2), for lack of personal jurisdiction over the defendants for purposes of those claims; (2) even if the court has personal jurisdiction over the defendants for purposes of those claims, those claims should be dismissed for improper venue, under 28 U.S.C. § 1406(a); (3) if the court agrees that the Sublease claims should be dismissed either for lack of personal jurisdiction or based on

improper venue, then the remaining claims for breach of the Franchise Agreement and Franchise Agreement guarantee should be transferred to the United States District Court for the Middle District of Florida, under 28 U.S.C. § 1404 (in which event the "defendants would consent to transfer of the Sublease claim[s] under § 1406(a) as opposed to dismissal" (Doc. No. 25 at 11 n.4)); or, alternatively, (4) if the court concludes that it has personal jurisdiction for purposes of the Sublease claims and that venue in this jurisdiction is proper with respect to those claims, then the entire case should be transferred to the Middle District of Florida under § 1404(a).[1] The plaintiff opposes the motion in all respects. (Doc. No. 37.) The defendants have filed a Reply in further support thereof. (Doc. No. 38.)

As set forth herein, the court finds that it has jurisdiction over the defendants and that venue in this district is not improper. The defendants' motion, however, will be granted and this case will be transferred to Florida under § 1404(a).

## I.   LEGAL STANDARDS

### A.   Personal Jurisdiction

Generally, when a defendant challenges personal jurisdiction under Rule 12(b)(2), "[t]he plaintiff bears the burden of making a *prima facie* showing of the court's personal jurisdiction over

---

[1] The defendants also argue that, at a minimum, the Sublease claims should be dismissed as to defendant ACP Management, which signed neither the Sublease nor the Sublease Guarantee. (Doc. No. 25 at 16.) While the Complaint somewhat ambiguously employs the collective term "Defendants" under Count II of the Complaint, asserting claims for breach of the Sublease and Sublease Guarantee, the remainder of the Complaint unambiguously identifies the parties to the Sublease and Sublease Guarantee as defendants ACPL and the individual defendants (Doc. No. 1 ¶¶ 25–26) and seeks an award of damages for breach of those agreements only against those defendants (*id.* at 12 ("Prayer for Relief")). The court, therefore, finds that the Complaint does not assert a claim against ACP Management for breach of the Sublease or Sublease Guarantee, so dismissal of such a claim is not necessary. (*See also* Doc. No. 37 at 24 ("Count II is not asserted against Defendant ACP Restaurant Management, Inc.").) That portion of the defendants' motion will be denied without further discussion.

the defendant." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). Further, in this circuit, a plaintiff "must demonstrate that personal jurisdiction is proper as to each of the claims set forth" in the Complaint. *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 655 (N.D. Ohio 2019) (citing *SunCoke Energy, Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 219 (6th Cir. 2009)).[2]

Generally, for a federal court sitting in diversity to exercise personal jurisdiction over a nonresident defendant, two requirements must be met: (1) the forum state's law must authorize jurisdiction; and (2) the exercise of jurisdiction must comport with the Fourteenth Amendment's Due Process Clause. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Because Tennessee's long-arm statute extends the reach of personal jurisdiction to "[a]ny basis not inconsistent with the constitution of this state or of the United States," Tenn. Code Ann. §§ 20-2-214(a)(6), -225(2), these two inquiries "collapse into one," *Baskin v. Pierce & Allred Constr., Inc.*, 676 S.W.3d 554, 567 (Tenn. 2023).

"Due process requires the defendant to possess certain minimum contacts with the forum State such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Johnson v. Griffin*, 85 F.4th 429, 432 (6th Cir. 2023) (internal quotation marks and citation omitted). However, "[a] party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction through a forum selection clause." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972); *see also Ins. Corp. of Ireland v. Compagnie des*

---

[2] In *SunCoke Energy*, two judges on the three-judge panel—Judge White (in her concurrence) and Judge Rogers (in his dissent in part)—found that personal jurisdiction must exist for each of the plaintiff's separate claims. *See SunCoke Energy*, 563 F.3d at 217 (White, J., concurring); *id.* at 219 (Rogers, J., dissenting in part). The district courts within this circuit "have determined this proposition to be the majority rule in this Circuit." *J.M. Smucker Co.*, 420 F. Supp. 3d at 655 n.7 (collecting cases).

*Bauxites de Guinee*, 456 U.S. 694, 704 (1982) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court[.]" (citations omitted)); *accord Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006). Consent to personal jurisdiction through a forum selection clause obviates the need for a full due process "minimum contacts" inquiry. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, n.14 (1985).

### B.      Venue

A defendant may move to dismiss a claim under Rule 12 for improper venue. Fed. R. Civ. P. 12(b)(3). Generally, for venue to be "proper," a case must be filed in one of the districts identified in 28 U.S.C. § 1391:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); *see Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 56 (2013) ("When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)."). Venue must be proper as to each claim. *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014); *see also* 14D Wright *et al.*, Federal Practice and Procedure § 3808 (4th ed. 2013) (April 2026 update) (same).

At the same time, however, "[a]s with personal jurisdiction, Defendant may waive objection to venue, and courts will generally enforce waivers made by agreement." *ViSalus, Inc. v. Smith*, No. 13-10631, 2013 WL 2156031, at *8 (E.D. Mich. May 17, 2013) (citing, among others, *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 590–95 (1991); *M/S Bremen*, 407 U.S. at 8–

20)). When a defendant has consented to venue in a particular district, he cannot object to it as "improper." *Accord id.* ("The forum-selection clause, which the Court has found to be enforceable for the purpose of deciding Defendant's motion . . . , is a valid waiver of the requirement of proper venue.").

Even if venue is proper, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision "give[s] district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerabo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). Once the court determines, as a threshold matter, that the case could have been brought in the transferee district, a court reviewing a motion to transfer venue then must "consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006) (quoting *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). District courts have "broad discretion" in making this determination. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)). "[T]he defendant bears the burden to show that a transfer is warranted." *Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 619 n.2 (6th Cir. 2025) (citations omitted), *cert. denied*, 223 L. Ed. 2d 556 (Jan. 20, 2026).

## II.   BACKGROUND

As alleged in the Complaint, HR is a limited liability company organized under Delaware law, and its principal place of business is in Franklin, Tennessee. The defendants are all citizens

of Florida. (Compl. ¶¶ 2–9.) HR is the franchisor of Hardee's® restaurants. Franchisees operate Hardee's® restaurants under a franchise agreement with HR. The court has diversity jurisdiction.

On October 13, 2014, when HR was still headquartered in Missouri (*see* Doc. No. 37-1, Mayes Decl. ¶ 3), HR and ACPL entered into the Franchise Agreement that gave ACPL a license to operate a Hardee's® restaurant ("Restaurant") at 10840 West Colonial Drive, Ocoee, Florida for a period of twenty years. (*See* Doc. No. 1-1.) The three individual defendants and ACP Management each signed the Franchise Agreement Guarantee. (Doc. No. 1-1 at 48–50.) The Franchise Agreement contains a "governing law" provision, specifying that any dispute between the parties arising out of the Franchise Agreement will be governed by Missouri law. (Doc. No. 1-1, Franchise Agreement ¶ 27.A.) It also contains a "forum" provision:

> The parties agree that, to the extent *any disputes* cannot be resolved directly between them, Franchisee shall file any suit against HR only in the federal or state court having jurisdiction where HR's principal offices are located at the time suit is filed. HR may file suit in the federal or state court located *in the jurisdiction where its principal offices are located at the time suit is filed* or in the jurisdiction where Franchisee resides or does business or where the Franchised Restaurant is or was located or where the claim arose. Franchisee consents to the personal jurisdiction of those courts over Franchisee and venue in those courts.

(*Id.* ¶ 27.B (emphasis added).) The Franchise Agreement Guarantee expressly "incorporate[s] by reference" that provision. (Doc. No. 1-1 at 49, Franchise Agreement Guarantee ¶ 3.G.)

Among other events, the franchisee's failure to "continuously operate the Franchised Restaurant for a period in excess of 5 consecutive days" gives HR the right to terminate the Franchise Agreement upon written notice but without a cure period. (Franchise Agreement ¶ 18.A(1).) Likewise, HR has the right to terminate the Franchise Agreement without an opportunity to cure if the franchisee "remains in default beyond the applicable cure period under *any other agreement with HR* or its affiliates . . . or Franchisee remains in default beyond the

applicable cure period *under any real estate lease*, equipment lease, or financing instrument relating to the Franchised Restaurant." (*Id.* ¶ 18.A(13) (emphasis added).)

On September 12, 2014, a month before they executed the Franchise Agreement, HR and ACPL executed the Sublease,[3] to be effective October 14, 2014, for premises located at 10840 West Colonial Drive, Ocoee, Florida ("Premises"), with an expiration date of September 30, 2031. (Doc. No. 1-4, Sublease.) The individual defendants (but not ACP Management) executed the Sublease Guarantee, which has an effective date of October 14, 2014. (Doc. No. 1-5.) The Sublease states that the law "applicable to the performance of this Sublease shall be the law of the state where the Premises are located" (Doc. No. 1-4, Sublease ¶ 23), *i.e.*, Florida, but it does not contain a venue provision. It states that it is entered into "pursuant to that certain Asset Purchase Agreement" that HR and ACPL entered into on September 12, 2014[4] "and all other such documents, agreements and instruments entered into or given pursuant to such Purchase Agreement," specifically including the Franchise Agreement, even though the Franchise Agreement had apparently not yet been executed. (*Id.* at 1.) These documents are collectively defined, for purposes of the Sublease, as the "Transaction Documents." (*Id.*)

The Sublease provides that the Sublandlord (HR) subleases the Premises to the Subtenant (ACPL), and Subtenant subleases the Premises from Sublandlord, "[i]n consideration of the Rent, and of the other terms, covenants and conditions set forth in this Sublease and in the Transaction Documents." (*Id.* ¶ 2.1.) The Sublease requires the Subtenant to use the premises "solely and exclusively as a Hardee's restaurant operated in accordance with the Transaction Documents."

---

[3] The Sublease is subject and subordinate to a Prime Lease between Hardee's Food Systems, Inc. and a third party, not relevant here. (*See* Doc. No. 1-2.)

[4] The Asset Purchase Agreement is not in the court's record, and the parties' filings do not refer to it.

(*Id.* ¶ 4.1.) Various other provisions of the Sublease cross-reference the Transaction Documents as well. For instance, the Subtenant has the responsibility to perform all maintenance and repairs on the Premises "to the extent Sublandlord is obligated to perform the same under the Prime Lease," but this provision is not to be construed to "limit any repair or maintenance obligations of the Subtenant under the Transaction Documents." (*Id.* ¶ 7.) Likewise, the Subtenant is required to perform and pay for all remodeling and upgrading that might be necessary "to keep the Premises . . . in compliance with any and all standards imposed by the Transaction Documents." (*Id.* ¶ 14.4.) Importantly, the Sublease provides that a default in the timely performance of any obligation under the Transaction Documents, expressly including the Franchise Agreement, shall also constitute a default under the Sublease. (*Id.* ¶ 19(i).)

In 2017, approximately two and one-half years after the parties executed the Franchise Agreement and the Sublease, HR moved its corporate headquarters from Missouri to Franklin, Tennessee. (Hayes Decl. ¶ 3.)

In August 2023, ACPL ceased operating and closed the Restaurant, in violation of the Franchise Agreement. (Compl. ¶ 38.) Following the closure of the Restaurant, HR and ACPL "engaged in several conversations regarding ACPL's unauthorized closure of the Restaurant, the condition of the Restaurant Premises, and ACPL's ongoing obligations under the Franchise Agreement and Sublease Agreement. (Compl. ¶ 39.) In April 2024, after "months of negotiations," HR sent ACPL a notice of Conditional Consent to Close, which ACPL never signed. (*Id.* ¶¶ 41– 42.) In October 2024, HR sent the defendants a Notice of Default and Termination of the Franchise Agreement. (*Id.* ¶ 44.) In March 2025, HR sent the defendants a Demand for Payment, seeking past due rent and taxes, as well as the costs of repairing and restoring the leased premises to good condition, under the Sublease Agreement, and liquidated damages and accruing finance charges

under the Franchise Agreement. (*Id.* ¶ 45.) The defendants did not respond. (*Id.* ¶ 45.) In June 2025, HR sent ACPL a Notice of Default and Termination of the Sublease Agreement. (*Id.* ¶ 47.) ACPL did not respond.

HR thereafter filed this breach of contract action, seeking damages for breach of the Franchise Agreement, Sublease Agreement, and both Guarantee agreements. The defendants responded by filing the present Motion for Partial Dismissal and to Transfer Venue. (Doc. No. 24.)

## III.    DISCUSSION

### A.    Personal Jurisdiction

The defendants argue, first, that the court lacks personal jurisdiction over them for purposes of the Sublease and Sublease Guarantee claims. In support of this argument, the defendants have submitted the Declarations of the three individual defendants, all of whom attest that (1) they are Florida residents; (2) at the time they signed the Guaranty agreements, HR was not based in Tennessee; (3) none of the negotiations that led to the execution of the Franchise Agreement, Sublease, and related Guaranties took place in Tennessee; and (4) they have never traveled to Tennessee for any reason related to their business relationship with HR. (Doc. No. 25-2, A. Gerges Decl. ¶¶ 2, 5–7; Doc. No. 25-3, E. Gerges Decl. ¶¶ 2, 4–6; Doc. No. 25-4, G. Gerges Decl. ¶¶ 1,[5] 3–5.) Aihab Gerges further attests, in his capacity as president of ACP Management, that neither ACPL nor ACP Management owns or operates restaurants in Tennessee or conducts any business in Tennessee and that the entity defendants' "only connection to Tennessee is that [HR] and its corporate parents now maintain their principal place of business in Franklin, Tennessee." (A. Gerges Decl. ¶ 10.) The defendants presume that the plaintiff intends to argue that it has specific jurisdiction over them, and they assert that simply entering into a contract with a party—*i.e.*, the

---

[5] The G. Gerges Declaration contains two paragraphs numbered "1.)

Sublease—is not sufficient to establish the requisite minimum contacts for a court in the plaintiff's home forum to exercise jurisdiction over them. (*See* Doc. No. 25 at 6–7.)

In response, HR points out that the defendants consented to jurisdiction in this district for purposes of the Franchise Agreement, which the defendants do not dispute. HR further asserts that, through the Franchise Agreement, the "defendants consented to this forum, which ends the jurisdictional inquiry." (Doc. No. 37 at 10.) More specifically, HR emphasizes the language of the Franchise Agreement's forum selection clause, pursuant to which the defendants agreed to personal jurisdiction in the federal court "located in the jurisdiction where [HR's] principal offices are located at the time suit is filed" for "*any disputes*" between the parties." (Franchise Agreement ¶ 27.B (emphasis added).) HR maintains that the "any disputes" language confirms that the court has personal jurisdiction over the defendants for purposes of disputes relating to any of the contracts between the parties. (*Id.* at 11.) They also argue that the Franchise Agreement and Sublease must be read together as a single agreement and, moreover, that the Sublease incorporates by reference the Franchise Agreement, making it clear that the defendants consented to jurisdiction in this forum. In short, they argue that HR's principal offices are located in Franklin, Tennessee, which lies within the geographic reach of this court, and, therefore, that the defendants consented to the exercise of personal jurisdiction of this court for purposes of this entire dispute. (*Id.*)

The defendants insist in their Reply that the Franchise Agreement and Sublease cannot be read together as a single document, in part because they signed the Sublease a month before they signed the Franchise Agreement. They also note that the Franchise Agreement specifically recognizes the possibility that the franchisees could have owned the property on which the Restaurant was to be located or leased it from a third party. (Doc. No. 38 at 3.) Therefore, they argue, the Franchise Agreement was not dependent on the existence of the Sublease, so the two

documents do not need to "be read as one." (*Id.*) The defendants emphasize that the Sublease states that the Transaction Documents (including but not limited to the Franchise Agreement and the Sublease) "contain the entire understanding between the parties *with respect to their respective subject matter*, the Premises, and all aspects of the relationship between Subtenant and Sublandlord." (Sublease ¶ 31.) The defendants interpret the italicized portion of that clause to mean that the documents must all be considered as separate agreements, not a single contract. (Doc. No. 38 at 2–3.) Further, they point to the conflicting choice-of-law provisions to argue that it is clear that Franchise Agreement's forum-selection clause should not be read into the Sublease.

The court observes, as an initial matter, that a few simple clarifications in the contracting documents would have made litigating this issue entirely unnecessary. As a secondary matter, the court finds the caselaw cited by both parties to be largely irrelevant. The issue here is one of contract interpretation, which is basically the same under either Florida or Missouri law.

Under Florida law, "[w]here two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together." *Phoenix Motor Co. v. Desert Diamond Players Club, Inc.*, 144 So. 3d 694, 696 (Fla. Dist. Ct. App. 2014) (internal citations and quotation marks omitted). On the other hand, "if the parties execute two separate contracts and only one contract contains an arbitration clause, the parties cannot be compelled to arbitrate disputes arising from the contract that does not call for arbitration."[6] *Id.* (citing *Lee v. All Fla. Constr. Co.*, 662 So. 2d

---

[6] Missouri courts have expressly recognized that "[a]n arbitration clause is simply a particular type of forum selection clause." *Thieret Fam., LLC v. Delta Plains Servs., LLC*, 637 S.W.3d 595, 605 n.5 (Mo. Ct. App. 2021) (quoting *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 432 (Mo. 2003) (en banc)). Florida recognizes that arbitration and forum selection clauses are "similar." *Solomon L. Grp., P.A. v. Dovenmuehle Mortg., Inc.*, 332 So. 3d 56, 59 (Fla. Dist. Ct. App. 2021). Federal law is in accord. *See, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 698 (2010) (Ginsberg, J., dissenting) ("Arbitration provisions, this Court

365, 366 (Fla. Dist. Ct. App. 1995)). More generally, for one contract to incorporate another by reference, "the incorporating document must (1) specifically provide that it is subject to the incorporated [collateral] document and (2) the collateral document to be incorporated must be sufficiently described or referred to in the incorporating agreement so that the intent of the parties may be ascertained." *BGT Grp., Inc. v. Tradewinds Engine Servs., LLC*, 62 So.3d 1192, 1194 (Fla. Dist. Ct. App. 2011) (alteration in original) (internal quotation marks and citations omitted).

In *Phoenix Motor Co.*, the defendants executed purchase agreements that included arbitration clauses and that contemplated the execution of additional documents "as may be required by the terms and conditions of payment indicated on the front of this Order." 144 So. 3d at 695. Each time the defendants signed a purchase agreement, they also signed an export policy that expressly stated that "[e]xecution of the purchase/lease documents shall constitute acceptance of these terms and conditions." *Id.* at 696. The court held that these clauses, read together, "indicate the parties' intent for the purchase agreement and the export policy to be part of the same contract" and, further, that the arbitration provisions in the purchase agreements "apply to disputes arising from the export policy." *Id.* at 698.

Conversely, in *Lee*, the plaintiffs contracted with the defendant contracting company to build an addition onto their home. *Lee*, 662 So. 2d at 366. This contract contained an arbitration clause. After a hurricane damaged their home, the plaintiff signed a separate contract with the contractor to repair the storm damage. The second contract did not contain an arbitration clause, and it did not refer to or incorporate the earlier contract. *Id.* The court found that the plaintiffs could not be compelled to arbitrate a dispute concerning an alleged breach of the second contract.

---

has noted, are a species of forum-selection clauses." (citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974)).

Similarly, under Missouri law, "matters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract *in haec verba*." *Bridgecrest Acceptance Corp. v. Donaldson*, 648 S.W.3d 745, 752 (Mo. 2022) (citation omitted). Incorporation by reference may be found where "the intent to incorporate is clear and the incorporating contract makes a plain, explicit reference to and adequately identifies the incorporated document." *Id.* (citation omitted). Moreover, "[e]ven in the absence of explicit incorporation, 'contemporaneously signed documents relating to one subject matter or transaction are construed together' except when 'the realities of the situation indicate that the parties did not so intend.'" *Id.* at 752 n.5 (quoting *Johnson ex rel. Johnson v. JF Enters., LLC,* 400 S.W.3d 763, 767–68 (Mo. 2013) (en banc)).

In this case, the Sublease Agreement was signed approximately one month before the Franchise Agreement, but the same day as an Asset Purchase Agreement. (*See* Doc. No. 1-1 at 51, Franchise Agreement App. A (referencing Asset Purchase Agreement dated Sept. 12, 2014, pursuant to which the franchisee purchased five Hardee's Restaurants).) The effective date of the Sublease Agreement was October 14, 2014, one day after the Franchise Agreement's effective date. While the Franchise Agreement did not depend on the existence of the Sublease, the Sublease was expressly "entered into pursuant to" both the Asset Purchase Agreement and the (anticipated) Franchise Agreement, which together gave the franchisees "certain rights to operate a Hardee's restaurant at the Premises." (Sublease at 1.) In other words, the Sublease was dependent on the existence of the Franchise Agreement, even though it predated it. Under both Florida and Missouri law, these agreements were executed "near the same time, in the course of the same transaction, and concern the same subject matter," as a result of which they must be "read and construed together." *Phoenix Motor Co.*, 144 So. 3d at 696.

That conclusion is bolstered by the fact that the "Transaction Documents," including the Franchise Agreement, constitute part of the consideration for the Sublease; the subtenants are authorized to use the premises demised by the Sublease only as a Hardee's restaurant "operated in accordance with the Transaction Documents" and in no event for fewer days or hours per week "than those required by the Franchise Agreement"; and a breach of the Franchise Agreement also constitutes a breach of the Sublease. (Sublease ¶¶ 2.1, 4.1, 19.) The Sublease provides that all of the related Transaction Documents together "contain the entire understanding between the parties with respect to their respective subject matter . . . and all aspects of the relationship between Subtenant and Sublandlord." (*Id.* ¶ 31.)

In addition, as indicated above, the franchisee's remaining in default beyond the cure period "under any other agreement with HR"—or "under any real estate lease . . . relating to the Franchised Restaurant"—constitutes a default of the Franchise Agreement (Franchise Agreement ¶ 18.A(13)), giving HR the right to terminate the Franchise Agreement. In other words, while breach of the Franchise Agreement constitutes a breach of the Sublease, a default under the Sublease also constitutes a default of the Franchise Agreement. And termination of the Franchise Agreement would automatically mean that the franchisees could no longer operate the leased premises as a Hardee's restaurant.

Further, as HR argues, the Franchise Agreement provides very broadly that, if "*any disputes*" between the parties cannot be resolved directly between them, HR may file suit either in the district where its principal offices are located at the time suit is filed or in the district where the Restaurant is located and that the franchisee "consents to personal jurisdiction" and venue in those courts. (Franchise Agreement ¶ 27(B).)

While the defendants are correct that breach of the two agreements gives rise to different damages and that the two agreements contain different choice-of-law provisions, these distinctions do not create inconsistencies or make it impossible to read and construe the agreements together. The plaintiffs are alleged to have breached *both* the Franchise Agreement and the Sublease on or about August 25, 2023, when they ceased operating and closed the Restaurant, violating both ¶ 18.A(1) of the Franchise Agreement and ¶ 4.1 of the Sublease. In addition, the failure to make payments required by the Franchise Agreement constituted breach of both agreements (*see* Franchise Agreement ¶ 18.B(2); Sublease ¶ 19(i)), and the failure to pay rent constituted a breach of both agreements as well (*see* Franchise Agreement ¶ 18.A(13); Sublease ¶ 19(a)).

In other words, the Franchise Agreement and Sublease are inextricably intertwined and must be read and construed together. And the forum selection clause in the Franchise Agreement—which, as the defendants point out, was signed after the Sublease—unambiguously pertains to "any disputes" between the parties that cannot be resolved between them and, equally unambiguously, documents the franchisee's consent to the jurisdiction of this court to resolve those disputes. (Franchise Agreement ¶ 27.B.) The Franchise Agreement Guarantee expressly incorporates by reference ¶ 27.B of the Franchise Agreement. (Franchise Agreement Guarantee ¶ 3.G.)

The defendants do not argue that the forum selection clause, *per se*, is unjust or unreasonable. Under these circumstances, the court construes the forum selection clause in the Franchise Agreement as documenting the defendants' consent to jurisdiction and venue in this court for purposes of *any* dispute arising under the parties' franchise relationship, including disputes arising from the alleged breach of the Sublease and Sublease Guarantee. The defendants' motion to dismiss the Sublease claims for lack of personal jurisdiction, therefore, will be denied, without the need for a due process/minimum contacts analysis.

### B.      Improper Venue

The defendants' follow-up argument is that, even if the court finds that it has personal jurisdiction over the defendants, the Sublease claims should be dismissed based on improper venue. (Doc. No. 25 at 8.) That argument, however, presupposes that the court conducted a minimum-contacts analysis for purposes of personal jurisdiction, not that the court found that the defendants consented to both jurisdiction and venue in this forum for purposes of the Sublease claims as well as the Franchise Agreement claims. The court rejects this argument for the same reason it rejected the defendants' personal jurisdiction argument: the defendants consented to venue and jurisdiction in this court, so they cannot object to it as "improper." *ViSalus, Inc.*, 2013 WL 2156031, at *8.

The defendants' motion, insofar as it seeks dismissal for improper venue, will be denied.

### C.      Transfer Under 28 U.S.C. § 1404(a)

For their final alternative, the defendants argue that, even if the court concludes that it has jurisdiction and that venue is proper with respect to the Sublease claims, the court should transfer the entire case to the U.S. District Court for the Middle District of Florida under 28 U.S.C. § 1404(a).

#### 1.      The 1404 Analysis

Section 1404 provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404 "codifies the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Boling v. Prospect Funding Holdings, LLC*, 771 Fed. App'x 562, 567 (6th Cir. 2019) (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 60) (internal quotation marks and emphasis omitted). The

provision "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted).

The threshold consideration for a court ruling on a § 1404 motion is whether the action "might have been brought" in the transferee district. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Here, there is no dispute that the case could have been filed in Florida. The defendants all reside in Florida, which makes venue there proper. *See* 28 U.S.C. § 1391(b)(1). In addition, the forum selection clause identifies the "jurisdiction where Franchisee resides or does business or where the Franchised Restaurant is or was located" as a district in which HR "may file suit." (Franchise Agreement ¶ 27.B.)

Second, when a party seeks to transfer a case to another federal district because of or despite a purported forum selection clause, the court must determine whether the forum selection clause is "applicable to the claims at issue, mandatory, valid, and enforceable." *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 215 (6th Cir. 2021).[7] The defendants in this case do not contend that the forum selection clause is either invalid or unenforceable. (*See generally* Doc. No. 25.) And, generally, a party contesting validity must make a "strong showing" to have a forum selection clause set aside. *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972) (holding that a challenger to a forum selection clause's enforceability carries a "heavy burden of proof").

---

[7] In *Atlantic Marine*, *Lakeside Surfaces*, and, indeed, most cases considering a motion to transfer when a forum selection clause is at issue, the party seeking transfer is also the party seeking to enforce the forum selection clause. Here, of course, the defendants seek to avoid a forum selection clause, which requires this court to invert some of the language used by the Supreme Court and the Sixth Circuit in cases involving motions to transfer under § 1404(a) or to dismiss under the *forum non conveniens* doctrine to apply it to a case in which the moving defendants seek to avoid, rather than to enforce, a forum selection clause.

The defendants do argue that the clause at issue is permissive, rather than mandatory. (Doc. No. 25 at 13.) HR does not address this issue, and the court finds that the clause is clearly permissive, insofar as its use of the word "may" authorizes—but does not require—HR to file suit either in the district where its principal offices are located or in the district where the Restaurant was located, and it provides that the franchisee consents to jurisdiction and venue without requiring *exclusive* jurisdiction in any of those courts. (*See* Franchise Agreement ¶ 27.B ("HR may file suit . . . where its principal offices are located or . . . where Franchisee resides . . . . Franchisee consents to the personal jurisdiction of those courts . . . and venue in those courts.").) *Accord Scepter, Inc. v. Nolan Transportation Grp., LLC*, 352 F. Supp. 3d 825, 830 (M.D. Tenn. 2018) (Crenshaw, C.J.) ("A mandatory [forum selection clause] affirmatively requires that litigation arising from the contract be carried out in a given forum. By contrast, a permissive [forum selection clause] is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum." (quoting *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016))).

When a permissive forum selection clause is at issue, even when a moving defendant seeks to *enforce*, as opposed to avoid, a forum selection clause, "a standard *forum non conveniens* analysis applies." *Khardy Enters. LLC v. NCR Atleos Corp.*, No. 2:24-CV-12797, 2025 WL 303107, at *2 (E.D. Mich. Jan. 27, 2025) (citing *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 216 (6th Cir. 2021)). The "standard" analysis under § 1404(a) requires the court to balance case-specific factors, including the private interests of the parties and public-interest concerns, such as systemic integrity and fairness, which come under the rubric of "interests of justice." *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Private interests include such things as" "the relative ease of access

to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 498 (6th Cir. 2016) (citation omitted). Public interests include the enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law. *See Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877 (M.D. Tenn. 2019) (Crenshaw, C.J.) (citations omitted).

Generally, transfer is inappropriate where it serves only to shift inconvenience from one party to the other. *Id.* "The onus of showing that a plaintiff's choice of forum is unnecessarily burdensome falls on the defendant," *Heffernan*, 828 F.3d at 498 (6th Cir. 2016), and it is a "substantial one," *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 958 (M.D. Tenn. 2008) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Thus, as set forth above,, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese*, 574 F.3d at 320.

### 2.    *Balancing the 1404 Factors*

The defendants argue that the only factors weighing in favor of keeping venue of this case in Tennessee are (1) the plaintiff's choice of forum and (2) the permissive forum selection clause. (Doc. No. 25 at 14.) They argue that the latter must be accorded little weight, since it is merely permissive, and that the former is outweighed by the other factors that weigh heavily in favor of transfer. (*Id.*) The private factors the defendants identify as relevant to this inquiry include the location of witnesses; the residence and convenience of parties; and the location of events that gave rise to the disputes. The public interest factors they address include the relative interest of the

court in the transferee and transferor district in adjudicating the dispute and the familiarity of the local judges with the governing law. HR argues that these same factors, particularly its choice of venue, weigh in favor of maintaining venue in this court.

### a)    The Plaintiff's Choice of Forum

Generally, as indicated above, the plaintiff's choice of forum is entitled to substantial weight. *Reese*, 574 F.3d at 320. "However, a plaintiff's choice of forum is entitled to little weight 'where none of the conduct complained of occurred in the forum selected by the plaintiff.'" *Atkins v. Corecivic, Inc.*, No. 3:21-cv-00103, 2021 WL 4773080, at *7 (M.D. Tenn. Oct. 12, 2021) (quoting *Am. Signature Inc. v. Moody's Invs. Servs., Inc.*, No. 2:09-cv-878, 2010 WL 2667367, at *2 (S.D. Ohio July 2, 2010)). Here, the plaintiff is headquartered in Tennessee, but basically all of the relevant conduct occurred in Florida, and the plaintiff itself points to the fact that its "property-management services provider" is in Utah. (Mayes Decl. ¶ 11.). Moreover, the forum selection clause is permissive and contemplates venue in either Florida or the location of HR's headquarters. Under the circumstances, the court finds that the plaintiff's choice of forum weighs in favor of maintaining venue here, but not particularly strongly.

### b)    Location of Witnesses

The defendants assert that "nearly all of the potential witnesses and sources of proof for [HR's] claims are in Florida." (*Id.*) In particular, they presume that proof of HR's allegations that the Restaurant was found empty and in need of costly clean up and repair efforts will require testimony from witnesses in Florida, unless HR maintains that it hired cleaners and repairmen to travel from Tennessee to remediate the damages. They add, "[a]side from Hardee's own representatives who may have communicated with Defendants about the subject matter of this lawsuit, it is difficult to imagine what other Tennessee witnesses would be necessary to resolve this case." (*Id.* at 15.)

HR responds that the fact that *party* witnesses reside in Florida should be given little weight, as their testimony will not have to be compelled. It also argues that the defendants have not specifically identified a single non-party witness whose testimony they would need to compel and that, in any event, "to the extent HR must establish the condition of the [Premises], that evidence will come from the business records of HR's property-management services provider in Utah." (Doc. No. 37 at 22 (citing Mayes Decl. ¶ 11.) Thus, it denies requiring the testimony of non-party witnesses to prove the condition of the Premises.

This factor requires consideration of the convenience of *non-party* witnesses, and it is typically "one of the most important factors in the transfer analysis." *Smith*, 578 F. Supp. 2d at 963. The defendants do not identify any non-party witnesses necessary for their defense, and they only speculate as to whether HR will require testimony from non-party witnesses. "[T]he party seeking transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Id.* (citing C. Wright, A. Miller & E. Cooper, 15 Federal Practice and Procedure § 3851). Because the defendants have not specifically identified any essential non-party witnesses, they have not shown that this factor weighs in favor of transfer.

c)      *Residence and Convenience of Parties*

The defendants argue that there are three individual and two entity defendants, all of whom or which reside in Florida, and only one plaintiff, such that the "inconvenience to Defendants of litigating in Tennessee far exceeds the inconvenience to Plaintiff of litigating in Florida." (Doc. No. 25 at 15.) They also point out that there is already a lawsuit between HR against the same defendants pending in Florida state court, asserting claims for breach of a nearly identical sublease agreement and personal guarantees regarding a different restaurant location owned and operated by defendant ACPL. (*Id.* (citing Doc. No. 25-5).) As a result, they argue, the plaintiff cannot seriously argue that it would be more convenient to the parties to litigate in two locations at once.

In response, HR argues that transfer is not appropriate if it "merely shifts the burden of litigating in an inconvenient forum to the plaintiff." (Doc. No. 37 at 22 (quoting *Sacklow*, 377 F. Supp. 3d at 879).) HR also argues that, because the defendants consented to litigating in this forum through the forum selection clause, they cannot now claim that it is inconvenient.

As already indicated, the forum selection clause here does not favor either party, particularly insofar as it documents both parties' consent to litigate in either forum. HR is correct, however, that "transfer at the behest of a defendant is disfavored where it merely shifts the burden of litigating in an inconvenient forum to the plaintiff." *Sacklow*, 377 F. Supp. at 879. HR does not address the defendants' contention regarding the existence of a parallel lawsuit already pending in Florida state court in December 2024. The court finds that this factor might otherwise weigh heavily in favor of transfer, in order to prevent the defendants from being compelled to litigate in Florida and Tennessee at the same time. However, the court takes judicial notice from the publicly available docket for the Circuit Court for Volusia County, Florida that a jury verdict was rendered (in favor of the defendants) in the state court case on April 16, 2026, thus obviating this concern. Moreover, the fact that there are numerically more defendants than there are plaintiffs, standing alone, does not serve to make transfer substantially more convenient than maintaining venue in this court. The court, in sum, finds that this factor is neutral at best and, in any event, does not weigh heavily in favor of transfer.

### d)      *Location of Events Giving Rise to Suit*

Third, the defendants argue that the location of the events giving rise to suit weighs strongly in favor of transfer, since HR was not located in Tennessee at the time the parties executed the relevant agreements; both contracts relate to the Restaurant in Florida; the defendants have never traveled to Tennessee; and the case is "completely centered in Florida." (Doc. No. 25 at 16.)

HR addresses this factor in the context of its argument regarding the applicable public factors, disputing the defendants' assertion that Tennessee has nothing to do with this case. It contends that the defendants "maintained an ongoing, day-to-day relationship with HR's Tennessee headquarters" for the eight years preceding their default, during which "every meaningful aspect of the franchise relationship flowed through Tennessee." (Doc. No. 37 at 24.)

The court finds that, while the defendants' relationship with a franchisor located in Tennessee certainly provides some ties to this state, giving some weight to the plaintiff's choice of forum, this factor nonetheless weighs strongly in favor of transfer. The Sublease, in particular, calls for the application of Florida law and has effectively no connection with Tennessee. Even notices and rent payments under the Sublease were to be submitted to addresses in California, not Tennessee. While the failure to pay rent may have been felt at HR's headquarters, the Complaint points in particular to the condition of the Premises after the franchisee vacated and the costs of repairing and restoring the condition of the Premises. The Franchise Agreement's only connection with Tennessee is that HR moved its headquarters to Tennessee several years after the parties contracted. Although communications were sent from Tennessee to Florida regarding the alleged breach of the parties' contracts, and the effects of the alleged defaults by the defendants will be felt in Tennessee, the Restaurant is located in Florida, and the defendants' alleged abandonment of their contractual obligations took place in Florida. But for the existence of the forum selection clause, it seems unlikely that the lawsuit would or could have been filed in Tennessee, HR's assertions regarding the parties' "ongoing, day-to-day relationship" notwithstanding. This factor weighs heavily in favor of transfer.

### e)    *Public Factors*

Regarding the public factors, the defendants argue that Florida courts likely maintain a greater interest in adjudicating the case than Tennessee. Tennessee law does not apply to the case,

24

because the Sublease contains a Florida choice of law provision, and the Franchise Agreement contains a Missouri choice of law provision. HR argues in response that Tennessee has a strong public policy interest in enforcing the contract rights of resident businesses and that, to the extent application of Florida law is required, this court is fully capable of doing so. Neither party points to factors like the enforceability of the judgment, trial management, or docket congestion.

The court finds that Florida and Tennessee both have a strong interest in adjudicating this case. However, the fact that the Sublease calls for the application of Florida law and that neither contract calls for the application of Tennessee law weighs in favor of transfer, as would the fact that enforcement of the judgment would be more manageable from Florida. This factor, therefore, weighs in favor of transfer.

#### f)    Weighing the Factors

As set forth above, the defendant must show that litigating this forum would be unnecessarily burdensome, and transfer is not warranted unless the balance of factors weighs "strongly in favor of the defendant." *Reese*, 574 F.3d at 320. The defendants have shown that the location of events giving rise to this lawsuit weighs strongly in their favor and that the public interest factors weigh at least somewhat in their favor. The plaintiff's choice of forum weighs in favor of maintaining venue here, but not strongly, and the other factors are basically neutral. The court finds, in sum, that transferring venue would not merely shift inconvenience to the plaintiff and that the defendants have carried their burden of showing that transfer is warranted. Venue in Florida is proper; the parties consented to that venue; the defendants and the subject Restaurant are in Florida; all of the relevant events occurred in Florida; and execution of any judgment would be more manageable in Florida.

25

**IV.    CONCLUSION**

For the reasons set forth herein, the defendants' Motion to Transfer Venue (Doc. No. 24)

will be granted under 28 U.S.C. § 1404(a). An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge